IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Penny Coleman, | ) |
| | ) Civil Action No. 1:16-3465-TMC |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

The plaintiff, Penny Coleman, ("Coleman"), brought this action pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her claim for Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before this court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court reverse and remand the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. (ECF No. 15).[2] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. The Commissioner filed objections to the Report (ECF No. 17), and Coleman filed a response to those objections (ECF No. 22). Accordingly, this matter is now ripe

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

for review.

## BACKGROUND

Coleman applied for SSI on May 8, 2013, alleging disability beginning on December 1, 2011. (ECF No. 15 at 2). Coleman's application was denied initially and on reconsideration. On April 15, 2015, an Administrative Law Judge ("ALJ") heard testimony from both Coleman and a vocational expert. On July 2, 2015, the ALJ issued a decision denying Coleman's claim.

In his decision, the ALJ found that Coleman suffered from the following severe impairments: other and unspecified arthropathies, anxiety, affective disorder, and borderline intellectual functioning. *Id*. at 23. The ALJ found that, despite Coleman's limitations, jobs existed in significant numbers in the national economy that she could perform. *Id*. Coleman sought review of her case by the Appeals Council. The Appeals Council denied Coleman's request for review, making the ALJ's decision the final decision of the Commissioner. The present action followed.

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations,

or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

In her Report, the magistrate judge found: (1) that substantial evidence supported both the ALJ's finding that Coleman was not illiterate and his decision not to direct a finding of disability based on Medical-Vocational Rule 201.17[3] and (2) that the ALJ erred by relying on the jobs recommended by the Vocational Expert ("VE") without resolving a conflict between the restrictions in the residual functioning capacity ("RFC") assessment and the *Dictionary of Occupational Titles* ("*DOT*") descriptions of the jobs. (ECF No. 15). Accordingly, the Report recommends that the case be reversed and remanded for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

The Commissioner filed a single objection to the magistrate judge's Report arguing that the magistrate judge erred in finding that remand is warranted because there is a potential conflict between the RFC limitation to jobs "not at a production rate," and the job of "nut sorter." (ECF No. 17). The Commissioner argues that there is no conflict.

---

[3] Neither party objected to this portion of the magistrate judge's Report. Finding no clear error, the court adopts this portion of the Report.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983). In the final step of the five-step sequential process, the ALJ considers the claimant's age, education, work experience, and RFC to decide whether she can perform alternative work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). The claimant has the burden of proof for the first four steps, but at the final, fifth step, the Commissioner bears the burden to prove that the claimant is able to perform alternative work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ relies primarily on the *DOT*. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). The ALJ may also use a VE to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy. *Id.* The ALJ must:

> inquire, on the record, . . . whether the vocational expert's testimony conflicts with the [*DOT*], and [must] elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the [*DOT*]. The ALJ must, by determining if the vocational expert's explanation is reasonable, resolve conflicts before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled.

*Id.* at 207-08. Thus, "[t]he ALJ independently must identify conflicts between the expert's testimony and the [*DOT*]." *Id.* at 209. Furthermore, "an ALJ has not fully developed the record if it contains an unresolved conflict between the VE's testimony and the *DOT*" and "an ALJ errs if he ignores an apparent conflict on the basis that the VE testified that no conflict existed." *Henderson v. Colvin,* 643 F. App'x 273, 277 (4th Cir. 2016).

4

In this case, the ALJ asked the VE what jobs existed in the national economy during the relevant time period for a hypothetical claimant who could perform work at the sedimentary exertional level; required frequent handling and fingering; was limited to simple, routine, and repetitive tasks with only occasional interaction with supervisors and coworkers and no interaction with the public; whose time off task could be accommodated by normal breaks; limited to simple, routine, repetitive tasks that could not be performed at a production rate pace. (ECF No. 15 at 20–21). The VE testified to three jobs in the national economy that such a worker could perform: "bench hand worker (DOT 715.684-026);" "hand trimmer (DOT 754. 687-094);" and "nut sorter (DOT 521.687-086)."[4] *Id*. at 21.

In her Report, the magistrate judge found that the ALJ failed to identify and resolve the conflict in the VE's proposed job of "bench hand worker" between the *DOT* and the RFC's restriction.[5] (ECF No. 15 at 36). Next, she found that the VE provided an erroneous *DOT* number for his proposed job of "hand trimmer." *Id*. The magistrate judge considered all three of the possible hand trimmer jobs listed in the *DOT* and found that they all contain apparent conflicts with Plaintiff's RFC which the ALJ failed to address and resolve.[6] *Id*. at 36-38. The court notes that neither party objected to the aforementioned portions of the Report.

---

[4] The ALJ is required to provide at least one occupation existing in a significant number in the national economy to satisfy the burden of proof at step five of his analysis. 20 C.F.R. § 416.966(b) ("[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical and mental abilities and vocational qualifications.").

[5] Plaintiff's RFC was limited to work involving frequent handling, whereas the job of bench hand, *DOT* number 715.684-026, specifically required handling: "Constantly—Exists 2/3 or more of the time." *715.684-026 Bench Hand*, *DOT* (4th ed., revised 1991), 1991 WL 679344.

[6] The magistrate judge found it unclear from the ALJ's decision which hand trimmer job the VE and ALJ meant to cite with *DOT* number 754.687-094. The magistrate judge found that: 585.684-010 (trimmer, hand) conflicted with the RFC's restriction to work at the sedentary exertional level because it is indicated to require light exertion. (ECF No. 15 at 37). She further found that 734.687-094 (zipper trimmer, hand) and 732.587-010 (golf-ball trimmer) conflicted with the RFC restriction of simple, routine and repetitive tasks because they require a general educational development reasoning level of two, which required the ability to understand detailed instructions. *Id*. at 37-38.

Finally, the magistrate judge found that the VE's testimony that Coleman could perform work as a "nut sorter" appeared to conflict with the *DOT* in this case because the ALJ imposed a restriction for jobs to be "not at a production rate," based on Coleman's mental and intellectual limitations. (ECF No. 15 at 41). The magistrate judge noted that "[n]either this court nor the Fourth Circuit have addressed this issue, and cases from other courts within the Fourth Circuit appear to support both positions." (ECF No. 15 at 39). She went on to state, "Both Plaintiff and the Commissioner present meritorious arguments. In the absence of any controlling authority and in view of the seemingly-conflicting decisions in [this circuit], this issue presents a close call." *Id*. at 41.

Coleman argued that the *DOT*'s description of the job[7] conflicted with the production pace restriction because the job requires workers to observe items and remove items from a conveyor belt. (ECF No. 11 at 30-31). The Commissioner argued that nut sorter is a sedentary job and production pace work is, by definition,[8] performed at the "light" exertional level and above. (ECF No. 12 at 25-27).

The magistrate judge found that while the definition of "light work" in the *DOT* addresses production rate work, it actually refers to the physical, rather than the mental "stress and strain of maintaining a production rate pace." (ECF No. 15 at 41); *DOT,* Appendix C, 1991

---

[7] The DOT describes the job of nut sorter as follows: "Removes defective nuts and foreign matter from bulk nut meats: Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers." (ECF No. 15 at 39); *521.687-086 Nut Sorter*, *DOT* (4th ed., revised 1991), 1991 WL 674226.

[8] The DOT defines light work as:
> exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects . . . Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: . . . when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

(ECF No. 17 at 2); *DOT,* Appendix C, 1991 WL 688702.

WL 688702. She stated that while the definition of "light work" refers to "production rate pace" and the definition of "sedentary work" does not, the term's definitions do not rule out the possibility that less physically-taxing, equally mentally taxing production rate jobs exist at the sedentary level. (ECF No. 15 at 41). Because the *DOT's* definition of nut sorter suggests that an individual performing the job must remove the defective nuts and foreign matter from a conveyor belt within some time constraint in order for the nuts to travel down the production line, the Report found that the job of nut sorter does not accommodate the mental restriction in the RFC assessment for no work requiring a production rate. *Id*.

In her objections, the Commissioner argues that the Report impermissibly reweighed the evidence, when the ALJ's decision was supported by substantial evidence. (ECF No. 17 at 4) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (the court does not "undertake to reweigh conflicting evidence . . . or substitute our judgment for that of the [ALJ].")). She asserts that based on the definitions contained in the *DOT*, there is no conflict between the job of nut sorter and the limitation of "not at a production rate." (ECF No. 17 at 1). She provides examples from other districts in which other VE's identified the job of nut sorter in response to a hypothetical question involving no production pace work,[9] and asserts that this case is akin to *Karriker v. Berryhill*, No. 1:16-21, 2017 WL 722012, at *7 (M.D.N.C. Feb. 23, 2017), in which the magistrate judge found that because the recommended positions were classified by the *DOT* as sedentary, not light, there was no apparent conflict between the VE's testimony and the *DOT* guidance, and substantial evidence supported the ultimate step five determination of the ALJ.

---

[9] *See Nabis-Smith v. Colvin*, No. 6:13-CV-01427-JE, 2015 WL 6964179, at *7 (D. Or. Nov. 9, 2015), *aff'd sub nom. Nabis-Smith v. Berryhill*, No. 16-35021, -- F. App'x --, 2017 WL 1532061 (9th Cir. Apr. 28, 2017); *Levinson v. Colvin*, No. 12-CV-1368, 2013 WL 4504451, at *10 (W.D. Pa. Aug. 22, 2013); *Johnson v. Astrue*, No. 1:08-CV-00525, 2010 WL 760604, at *3 (S.D. Ohio Mar. 3, 2010).

The Commissioner compared this case to the situation in *Karriker*, in which the ALJ asked a VE what jobs existed in the national economy during the relevant time for a hypothetical claimant with the following limitations based on Plaintiff's physical and mental limitations: "the ability to only perform sedentary work, with the ability to sustain attention and concentration for two hours at a time, the ability to follow short and simple instructions, and the ability to perform routine tasks with no production rates or demand pace." *Karriker v. Berryhill*, 2017 WL 722012, at *6. The VE identified "the positions of order clerk *(DOT* 209.567–014), table worker (*DOT* 739.687–182), and hand sorter (*DOT* 734.687–082) as jobs which existed in substantial numbers and which a hypothetical claimant similarly situated to Plaintiff could perform." *Id*. The claimant argued that the table worker and hand sorter positions, by nature, require a worker to maintain production pace. *Id*. The magistrate judge examined the *DOT* definition for "light work," which states, "a job should be rated Light Work . . . when the job requires working at a production rate entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." *Id*. The table worker and hand sorter positions (like the position of "nut sorter" in the present case) are classified by the *DOT* as "sedentary," not light. Thus, the court in *Karriker* concluded that there is no apparent conflict between the VE testimony and the guidance set out in *DOT* Appendix C. *Id*.

However, in *Lewis v. Colvin*, the court found that an apparent conflict existed between the VE's proposed sedentary job as a lens inserter and the *DOT* description of the job, which described the job as follows: "[f]its lenses into plastic sunglass frames and places frames *on conveyer belt* that passes under heat lamps which soften frames preparatory to setting of lenses." *Lewis v. Colvin*, No. 7:13-59-D, 2014 WL 4205834, at *12 (E.D.N.C. Aug. 5, 2014), *adopted by* 2014 WL 4205994 (E.D.N.C. Aug. 25, 2014); 713.687-026 Lens Inserter*, DOT* (4th ed., revised

1991), 1991 WL 679273.  Emphasizing the phrase "on conveyer belt," the court found that the job appeared to entail production pace work, which was contrary to a provision in the RFC, and found that the ALJ erred in relying on the VE's testimony in the absence of an explanation as to how he resolved the conflict.  *Lewis*, 2014 WL 4205834, at *12.

In his decision, the ALJ in this case noted that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [*DOT*]," and concluded that, "considering the claimant's age, education, work experience, and residual functioning capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ECF No. 10-3 at 21).  However, he failed to address any of the conflicts noted by and addressed in depth by the magistrate judge.  *See Pearson*, 810 F.3d at 209 ("The ALJ independently must identify conflicts between the expert's testimony and the [*DOT*].").

The court agrees with the magistrate judge's analysis.  The fact that the definition for light work refers to "production rate pace" does not mean that less *physically* taxing but equally *mentally* taxing jobs may exist at the sedentary exertional level.  The *DOT* definition of sedentary work does not preclude production rate pace. *DOT,* Appendix C, 1991 WL 688702.  The court declines to make assumptions based on what the definition of sedentary work does not say.  Further, the *DOT* definition of the "nut sorter" job suggests that the worker would be required to remove defective product and foreign matter from a conveyer belt within a time constraint.  *See 521.687-086 Nut Sorter*, *DOT* (4th ed., revised 1991), 1991 WL 674226.  Thus, pursuant to the *DOT* definition, it appears that the job of nut sorter fails to accommodate the mental restriction requiring no production rate pace, and both the ALJ and VE failed to identify or explain this potential conflict.  *See Pearson*, 810 F.3d at 209; *see, e.g., Wagner v. Colvin*, No.

9

5:15-cv-464-D, 2016 WL 4098685, at *3 n.7 (E.D.N.C. July 12, 2016), adopted by 2016 WL 4059166 (E.D.N.C. July 27, 2016).  The court does not intend to create a per se rule regarding the classification of the job in question.  Rather, considering the totality of the circumstances, including the unaddressed conflicts and lack of clarity regarding all three of the VE's proposed jobs relied on by the ALJ, this particular instance requires additional vocational input to cure the confusion surrounding the situation.  Accordingly, the court finds it appropriate to remand the action pursuant to sentence four or 42 U.S.C. § 405(g) for further administrative proceedings.

## CONCLUSION

Having conducted the required de novo review of the issues to which Coleman has objected, the court finds no basis for disturbing the Report.  The court concurs with both the reasoning and the result reached by the Magistrate Judge in her Report.  Accordingly, the court adopts the Report (ECF No. 15) and the Commissioner's final decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review as set forth in the Report.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 22, 2018
Anderson, South Carolina